UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZACHARY BEAN, </br></br>  Plaintiff </br></br> v. </br></br> ALLIED INTERSTATE, INC., </br></br>  Defendant | CASE NO:  1:12-cv-09355-LTS-DCF |

**BRIEF IN REPLY TO DEFENDANT'S OPPOSITION
TO PLAINTIFF'S PETITON FOR ATTORNEY'S FEES AND COSTS**

BY: KIMMEL & SILVERMAN, P.C.

/s/ Craig Thor Kimmel
Craig Thor Kimmel
1001 6th Avenue, Suite 12
New York, NY 10018
Phone: (800) 668-3247
Fax: (800) 863-1689
Email: kimmel@creditlaw.com

## **TABLE OF CONTENTS**

ARGUMENT……………………………..........................................................................1

    a.    Defendant's Routine Unlawful and Wrongful Collection Practices is the Cause of the Numerous Lawsuits Filed against it ........................................1

    b.    The reduced hourly rates sought by Plaintiff herein are reasonable.............3

    c.    The reduced hours billed by Plaintiff's counsel are reasonable ...................4

        1.    Emails between Counsel and Staff...................................................4

        2.    ECF Emails .......................................................................................7

        3.    Telephone Calls................................................................................7

        4.    Fee Petition.......................................................................................8

CONCLUSION…………………………….....................................................................9

## **TABLE OF AUTHORITIES**

**Cases**

Conklin v. Pressler & Pressler, LLP, 2012 WL 569384 (D.N.J. Feb. 21,2012)………… 7

Holzhauer v. Hayt Hayt and Landau, LLC, 3:11-cv-02336-FLW-DEA,
(D.N.J. August 10, 2012) ....................................................................................................4

Planned Parenthood v. AG, 297 F.3d 253 (3d Cir. 2002) ...................................................4

Reith v. Allied Interstate, Inc., 12 Civ. 4278 (S.D.N.Y. Nov. 8, 2012) ............................5,7

Rodriguez-Hernandez v. Miranda Velez, 132 F.3d 848 (1st Cir. 1998) ............................4

VFS Fin., Inc, v. Pioneer Aviation, LLC *et al.*, No. 1:08-cv-07655, Docket Entry 47
(S.D.N.Y. Aug. 29, 2008) ....................................................................................................5

**Statutes**

28 U.S.C. § 1391(b)(1) ........................................................................................................2

I.   **ARGUMENT**

a. **Defendant's Routine Unlawful and Wrongful Collection Practices is the Cause of the Numerous Lawsuits Filed Against It.**

Defendant attempts to blur the issues- namely the reasonableness of the fees and billing entries submitted by Plaintiff's counsel- by personally attacking the law firm for filing what it deems to be a relatively high volume of similar complaints.  See Docket Entry 15, pg. 2. However, the number of complaints filed against Allied is a result of its own conduct.  Debt collectors, Defendant in particular, try to abstract as much money out of consumers as possible, sacrificing civility and fair play when it results in the greatest monetary return.  This is the way it has always been in the past, the way it is now, and the way it will be until the day when the cost of such behavior is greater than the profit from such behavior.  "The FTC [the agency charged with monitoring the FDCPA] receives more complaints about the debt collection industry than any other specific industry."  See Exhibit "A" at 4, 2011 FTC Report on the FDCPA.  In particular, Defendant's violations of the FDCPA have resulted in the second largest civil penalty in history for a debt collection case.  See Exhibit "B", FTC Press Release.  In October 2010, the FTC filed suit against Defendant for its egregious violations of the FDCPA.  See Exhibit "C", FTC Complaint.  The allegations contained in the FTC complaint against Defendant are nothing novel.  Rather, the FTC report describes precisely the conduct for which Defendant is sued on a regular basis, including in the present lawsuit.  See Exhibit "C" at 3-4.

In the less than two years since the FTC filed its Complaint against Defendant, over 370 lawsuits in federal courts have been brought against Defendant for violations of consumer protections statutes.  See Exhibit "D", Pacer Search Results.  However, Defendant's continuous violations of the FDCPA should come as no surprise.  The company's habitual harassment and deceit of consumers is apparent and has been subject to numerous lawsuits, reports from major

media outlets and additional governmental investigations.[1]  For instance, just several months prior to the filing of this Complaint, Allied was penalized by the Minnesota Department of Commerce for hiring and retaining debt collectors that forged financial documents and used profanity when collecting debts from consumers, as well as hiring numerous convicted felons as debt collectors and knowingly failing to report this, in violation of state law.  See Exhibit "E".

The idea that as a consumer protection law firm should be penalized because it has represented many distressed consumers against this serial violator of consumer rights can only be described as absurd.  Further, Defendant's use of inflammatory rhetoric and highly selective quotes is nothing more than a veiled attempt to shift the focus away from Defendant's violations of the FDCPA.  For example, Defendant claims that Plaintiff's counsel "forum shop[s]" by filing suits in this District.  See Docket Entry 15, p. 2.  Defendant supports this contention by pointing out that Plaintiff's law firm, based in Ambler, Pennsylvania, represents plaintiffs from locations outside the Southern District of New York, yet files suit in this District.  See Id.  However, it is not contested that Defendant maintains its headquarters on Madison Avenue in New York City.  As 28 U.S.C. § 1391(b)(1) provides that venue is appropriate in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located", Defendant's accusation that Plaintiff's counsel "forum-shops" has no basis.

Defendant also wrongfully characterizes K&S as a "FDCPA volume shop that files thousands of FDCPA cases a year."  See Docket Entry 15, p. 2.  K&S is not a "volume shop", nor does it file "thousands" of FDCPA cases per year, or anything close to that amount.[2]  Any

---

[1] See Exhibit "E", NBC Minneapolis-St. Paul KARE News Online: *Collection Agencies Targeted by MN Commerce Dept.* (Oct. 7, 2011), *at*:
http://www.kare11.com/news/article/941526/396/Collection-agencies-targeted-by-MN-Commerce-Department.

[2] While Defendant indicates that the undersigned's firm files thousands of cases, the document offered in support of this position reflects only thirty-one lawsuits.  See Docket Entry 32-5.

- 2 -

perceived "volume" in the filing of FDCPA lawsuits can easily be attributed to the widespread corruption and harassing tactics, for which the collection industry is notorious.[3] Defendant has made it clear through its continued misconduct that it chooses to violate the FDCPA, thus requiring consumer right's firms to continue to represent consumers that have been aggrieved by Defendant's abusive conduct.

In addition to its habitually wrongful conduct, of which it appears to have no remorse, the volume of suits against Defendant can be attributed to its recent refusal to resolve matters in an extra-judicial fashion. Prior to January 2012, the undersigned and in-house counsel for Defendant, Matthew Johnson, Vice President Legal iQor Us, Inc./Allied Interstate LLC/RMS (an iQor Corp.), worked to settle numerous cases prior to filing any litigation. During this time, they discussed their differing perspectives of the facts, negotiated and resolved each case, sometimes through a paid settlement or a closure of the claim. In January 2012, Defendant began delaying responses to pre-litigation demands from the undersigned and offering amounts that could not reasonably compensate aggrieved consumers or their advocates. Due to Defendant's discontinuance of its pre-litigation program with K&S, consumers subjected to debt collection abuse by Defendant are now required to seek their remedies in court. Accordingly, it is Defendant's repeated disregard for the law and its refusal to negotiate in good-faith that has led to any perceived or real volume of suits against it.

**b. The reduced hourly rates sought by Plaintiff herein are reasonable.**

Defendant argues that Plaintiff's counsel's rates are "unreasonable because it seeks what the Southern District has recognized are overly-high rates[.]" See Docket Entry 15, p. 7.

---

[3] See Exhibit "F": Ben Protess, *Collection and Credit Firms Facing Broad New Oversight,* NY Times Online: Dealbook (Feb, 16, 2012), *at*: http://dealbook.nytimes.com/2012/02/16/consumer-bureau-proposesfirstcrackdown/?pagemode=print.

- 3 -

However, in light of the recent Reports and Recommendations issued by the Honorable Debra Freeman on January 30, 2013[4], many which were recently approved by the Honorable Loretta A. Preska, Plaintiff's counsel's rates were reduced prior to submission and are consistent with the rates approved in those matters.  Specifically, hourly rates were reduced to $300.00 for Mr. Kimmel, $225.00 for Ms. Bennecoff, $200.00 for Mr. Kelleher, $175.00 for Mr. Ginsburg, and $80-100 for paralegals assigned to the case.  These rates are consistent with those approved by both Judges Freeman and Preska. See Docket Entry 15-8.

      **c.** **The reduced hours billed by Plaintiff's Counsel are reasonable**

Defendant argues many of Plaintiff's time entries are for administrative tasks. See Docket Entry 15, pp. 13-16.  Plaintiff's counsel respectfully disagrees with this characterization and addresses each below.

      **1.** **Emails between Counsel and Staff**

Defendant focuses largely on emails exchanged between counsel and staff for its argument that the tasks billed are non-legal.  See Docket Entry 15, p 13.  However, email correspondence is a perfectly acceptable way for attorneys and staff to communicate and strategize about all aspects of litigation.  Contrary to Defendant's position, Courts have found that some degree of attorney collaboration and preparation is reasonable in a litigation matter. See Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 860 (1st Cir. 1998) ("Careful preparation often requires collaboration."); see also Planned Parenthood v. AG, 297 F.3d 253 (3d Cir. 2002) and Holzhauer, pp. 13-14, Exhibit "G" ("Communication between attorneys and paralegals facilitates delegation, which allows a law firm to conduct its business at a lower cost, as paralegal services are billed at a significantly lower hourly rate.").  Consistent with Holzhauer,

---

[4] See Docket Entry 15-8.

- 4 -

several of the entries Defendant points to how a proper use of interoffice emails for purposes of delegation to a lower billing staff member.

Notably, in Reith v. Allied Interstate, Inc., the Honorable P. Kevin Castel made no deductions to the increments of time billed by Plaintiff's counsel for performing tasks such as interoffice correspondence, telephone calls or review of court correspondence through the Court's ECF system, nor did he eliminate any billing entries entered by counsel, clearly finding the hours billed by Plaintiff's counsel to be reasonable. See 12 Civ. 4278 (S.D.N.Y. Nov. 8, 2012).  Further, Defendant's own billing records from a previous case indicates Defendant's willingness to recognize interoffice emails/communications, preparation of court forms, and review of docket entries as billable time rather than purely administrative tasks.  See VFS Fin., Inc, v. Pioneer Aviation, LLC *et al.*, No. 1:08-cv-07655, Docket Entry 47 (S.D.N.Y. Aug. 29, 2008) (attached as Exhibit "H").[5]

Defendant objects to emails on December 14, 2012 and December 17, 2012 between attorneys Craig Thor Kimmel and Amy L. Bennecoff.  The specific emails that Defendant objects to are emails between counsel collaborating with regard to the content of the Complaint.  Such collaboration is necessary to ensure that a Complaint is well-pled and includes all possible factual allegations and violations.

Defendant objects to emails on January 22, 2013, January 31, 2013, February 4, 2013, and March 8, 2013 between attorneys Craig Thor Kimmel and Amy L. Bennecoff regarding settlement in this matter.  Settlement negotiations are an ordinary aspect of litigation.  As the

---

[5] See Exhibit "H", pp. 16-22:  Defendant makes multiple billing entries for inter-office emails and calls.  For example, see the billing entries made on 09/10/2008 for 0.6 hours of "MULT. COMMS. W/E.LAZAROU RE: COMPLAINT"; on 11/07/08 for 0.3 hours of "EMAILS WITH D. KOCHMAN; NOTE TO FILE."; and on 9/2/08 for 0.4 hours of "TELLEPHONE CONFERENCE WITH E. LAZAROU."  Further, Defendant billed 2.00 hours on 09/30/2008 for tasks including a review of pleadings and orders and for a review of the docket.

FDCPA provides for payment of Plaintiff's reasonable attorneys' fees and costs, in arriving at a demand to convey, counsel must determine what amount of reasonable fees and costs to include. The emails that Defendant objects to reflect conferral among counsel with respect to the amount of fees and costs to include in a demand. Such communication among counsel was certainly reasonable and necessary in order to attempt to resolve in good faith the issue of fees and costs, which is required by the Honorable Laura T. Swain, without the necessity of the present Motion.

Defendant further objects to email correspondence between Jacob Ginsburg to Craig Thor Kimmel on March 15, 2012 and March 17, 2012. Although Defendant indicates Jacob Ginsburg sent correspondence on March 15, 2012, nothing appears in the invoice submitted in this matter on this date. It appears Defendant may have used a boilerplate document and failed to change the date of the email it is referencing. With regard to an email from Craig Thor Kimmel to Jacob Ginsburg on March 17, 2012, the entry is noted as being redacted to protect attorney-client privilege and work-product privilege as the entry included information that was subject to privilege and removed from the entry prior to submitting the bill. Without waiving any privilege, this email exchanged concerned the information gathering process and what information needed to be obtained from the Plaintiff regarding her claims.

Defendant also objects to emails from attorney Amy L. Bennecoff to paralegal Pete Keltz. These emails properly reflect delegation of tasks to paralegal staff. For example, the email on December 17, 2012 reflects Ms. Bennecoff delegating to Mr. Keltz certain tasks associated with the filing of the Complaint, which would not have been reasonably performed at Ms. Bennecoff's billing rate as an attorney.

Finally, Defendant objects to emails from Craig Thor Kimmel to Jason Ryan on January 13, 2012 and Pete Keltz on February 25, 2013 on the grounds that they are "vague." However, both email correspondence are clear regarding their content. On January 13, 2012, Mr. Kimmel

corresponded with Mr. Ryan regarding a cease and desist letter / letter of representation to send to Defendant, and on February 25, 2013 he corresponded with Mr. Keltz regarding acceptance of Defendant's Offer of Judgment in this matter.

### 2. **ECF Email**

Defendant also complains for billing for ECF emails. See Docket Entry 15, p. 14. Specifically, Defendant argues that Mr. Kimmel billed "for reading each and every individual ECF notice." See Id. This is inaccurate. A review of counsel's billing records reveals that Mr. Kimmel did not bill for the large majority of ECF notifications. Rather, he billed only for those filed by Defendant's counsel and/or the Court, amounting to a total of 0.5 hours.

Review of these notifications is important as ECF emails notify attorneys of pending motions, deadlines and court proposals. This information is necessary for attorneys to successfully strategize and litigate a matter, therefore cannot be considered administrative in nature. See Conklin v. Pressler & Pressler, LLP, 2012 WL 569384 (D.N.J. Feb. 21, 2012) (approving as reasonable time spent reviewing filings and notifications from ECF as necessary.) Such time was approved by Judge Castel in Reith v. Allied Interstate, Inc., 12 Civ. 4278 (S.D.N.Y. Nov. 8, 2012).

### 3. **Telephone Calls**

Defendant also indicates that telephone calls billed for by Plaintiff's counsel were administrative tasks. See Docket Entry 15, p. 12. However, Defendant identifies no telephone calls that it finds objectionable or administrative. Further, the only telephone calls billed were to Plaintiff totaling 1.2 hours. See Docket Entry 12-1. Certainly a total of 1.2 hours of telephone conversations with one's client during fifteen months of representation is not unreasonable, particularly in light of Plaintiff's counsel's obligations to keep its client reasonably informed of the status of the litigation pursuant to New York Rule of Professional Conduct 1.4.

### 4. Fee Petition

Finally, Defendant objects to the time for preparing the fee petition. See Docket Entry 15, p. 14. It appears Defendant again has relied on a boilerplate memorandum submitted in another matter as it is inaccurate with regards to the time spent by Plaintiff's counsel. For example, Defendant argues that Ms. Bennecoff billed time for preparation of the table of contents and table of authorities. See Id. However, both documents were prepared by Mr. Keltz and billed at his rate of $80.00. See Docket Entry 12-1. Ms. Bennecoff's only time related to these tasks was preparing modifications to both after revising the memorandum submitted in this matter when Mr. Keltz was out of the office. See Id.

Further, the amount of the fees sought by Plaintiff for preparation of the fee petition is minimal. Ms. Bennecoff spent one hour modifying form documents, reviewing documents prepared by paralegal Pete Keltz, and reviewing and redacting the bill submitted in this matter, as well as reducing and eliminating entries in the bill utilizing billing judgment. See Id. Likewise, Mr. Keltz spent one hour modifying form documents for submission. See Id.

Ms. Bennecoff's time included reviewing the bill to make reductions to protect attorney-client privilege and work-product privilege for 0.3 hours. This is not an administrative task that can be delegated to a paralegal, as ultimately it is the attorneys' responsibility to ensure that matters of privilege are protected. An attorney is also more appropriately tasked with determining what tasks are billable and not billable and a paralegal should not be tasked with applying billing judgment to make reductions to an invoice. Further, invoices are unique to an individual case, simply because counsel has handled prior fee petitions does not change the fact that the bill must still be reviewed and redactions and/or reductions made as necessary. Eighteen minutes to review a 65 line bill is not unreasonable.

Ms. Bennecoff also revised a form memorandum of law that is used by Plaintiff's counsel for 0.4 hours, and Mr. Keltz spent 0.2 hours assisting in the preparation of this document. See Docket Entry 12-1. Although this is a form document revisions are nevertheless required to the content of the memorandum. Defendant can not possibly believe that Plaintiff's counsel billed for the preparation of the entire 22 page fee petition. Certainly the preparation of such a lengthy document from scratch would take far in excess of the 0.6 hours that Ms. Bennecoff and Mr. Keltz actually billed. However, this minimal time is certainly reasonable to review a form memorandum and make appropriate changes for this particular matter.

Mr. Keltz also modified two form certifications in 0.3 hours to include information in the body and caption specific to this matter, including reference to tasks performed and time spent. He also spent 0.4 hours preparing documents to file in conjunction with the fee petition, such as the cover page to the memo, table of contents and table of authorities. See Docket Entry 12-1. Documents prepared by Mr. Keltz were ultimately reviewed by Ms. Bennecoff, an attorney, prior to submission to the Court for 0.2 hours.

Hence, contrary to Defendant's representations to this Court, Plaintiff's counsel properly delegated tasks associated with the fee petition that were more appropriately handled and billed by a paralegal to Mr. Keltz to prepare.

### III. CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests this Court enter an Order granting Plaintiff's reduced Petition for Fees and Costs, and grant Plaintiff $3,007.50 in reasonable fees and costs. See Docket Entry 12. Further, Plaintiff's counsel seeks 0.5 hours of time for Ms. Bennecoff's preparation of the present reply memorandum and accompanying documents, totaling an additional $112.50. In total, Plaintiff seeks $3,120.00.

Respectfully submitted,
Kimmel & Silverman, P.C.

By: /s/ Craig Thor Kimmel
    Craig Thor Kimmel
    1001 6th Avenue, Suite 12
    New York, NY 10018
    Phone: (800) 668-3247
    Email: kimmel@creditlaw.com
    Attorney for Plaintiff

Dated: April 8, 2013